**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**RODE CORPORATION, Defendant–
Appellant.**

No. 91–3806.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 2, 1992.

Decided June 14, 1993.

**175**

Richard D. Humphrey, Madison, WI (argued), for U.S.

Karl Green, Alan J. Strohschein (argued), Stoltz & Strohschein, Columbus, WI, for Rode Corp.

* The Honorable Albert J. Engel of the United States Court of Appeals for the Sixth Circuit is

Before RIPPLE and ROVNER, Circuit Judges, and ENGEL, Senior Circuit Judge.*

RIPPLE, Circuit Judge.

This is an appeal from a district court order holding that Rode Corporation (Rode) is unlawfully occupying a property that the United States purchased on June 8, 1982, at a foreclosure sale. The district court granted summary judgment for the United States and directed Rode to vacate the property and to surrender possession to the United States. For the reasons that follow, we affirm the judgment of the district court.

## I

## BACKGROUND

### A. Statutory Framework

This case involves a relatively unfamiliar and complex statutory scheme. Accordingly, at the outset, we set forth the basic framework.

#### 1. The 1985 Act

The Farmers Home Administration (FmHA) is the agency charged with administering a federal loan program intended to help farmers finance their property through low-interest government mortgages. In response to an industry-wide financial crisis in the late 70's and early 80's, Congress enacted The Farm Credit Amendments Act of 1985 (1985 Act). The 1985 Act gave certain rights to financially distressed FmHA borrowers who would otherwise be unable to pay their mortgages and, consequently, risked losing their farms. Specifically, financially distressed farmers were given the opportunity to apply for debt restructuring or for participation in the "leaseback/buyback" program. The leaseback/buyback program allows a previous farm owner who defaulted on an FmHA loan and lost his farm to "leaseback" his entire farm from the United States with the option to buy the farm back at any time during the lease.

sitting by designation.

### 2. The 1987 Act

In 1987, Congress amended The Agricultural Credit Act (1987 Act). The 1987 Act became effective on January 6, 1988. The 1987 Act provides that the Secretary of FmHA (Secretary) must notify eligible program participants of their rights. The two most significant program changes made by the 1987 Act were more lenient leaseback/buyback provisions and homestead protection. These leaseback/buyback and homestead protection rights are set forth as separate and distinct provisions. *See* 7 U.S.C. § 1985 and § 2000 (1988). We describe each in some detail in the following two paragraphs.

a. The leaseback/buyback provisions of the 1987 Act apply fully to "borrowers." Under the 1987 Act a borrower includes any farm borrower who "has outstanding obligations to ... FmHA under any Farmer Program Loan(s), ... *but does not include any such debtor all of whose loans and accounts have been foreclosed* or liquidated, voluntarily or otherwise." 7 C.F.R. § 1951.-906 (1993) (emphasis supplied). If FmHA exercises its right to foreclose on a defaulting debtor, and the United States purchases the property that secured the debt, the property goes into FmHA's "inventory" and becomes "CONACT" property. The leaseback/buyback provisions also apply to prior owners of CONACT property, but only if they were not given previous notice of the leaseback/buyback options under the 1985 Act.

b. The homestead protection provisions of the 1987 Act differ from the leaseback/buyback provisions in that they give the defaulter the opportunity to remain on his residence without purchasing the entire acreage originally mortgaged to FmHA. The 1987 Act defines "homestead property" to include the "principal residence, ... a reasonable number of outbuildings[,] ... and [up to] 10 acres of adjoining land that is used to maintain the family of the individual." 7 U.S.C. § 2000(a)(3). The homestead protections are only available for farmers who have resided continuously on their farms for the six years prior to foreclosure, but the provi-

sions apply to both borrowers and prior owners. The Secretary must "make a good faith effort to notify the borrower of the availability of homestead protection rights ... within 60 days [of January 6, 1988, when the statute was enacted]." 7 U.S.C. § 2000(c)(6). To take advantage of the homestead protections, a borrower or prior borrower must file an application with FmHA either within 90 days after FmHA acquires title to his property or, for property already in inventory on January 6, 1988, within 90 days of that date. 7 U.S.C. § 2000(c)(1)(A).

### 3. The 1990 Act

In 1990 the Agricultural Credit Act was amended again (1990 Act). *See* 7 U.S.C. § 1985(e)(1)(A)(iv) (West Supp.1993). The 1990 Act requires that any borrower or "prior borrower" who has leased the property within the preceding twelve months must be given an option to repurchase the property. The 1990 Act became effective in November 1990.

### B. *Facts*

Rode Corporation is a family-run farm corporation that purchased an 1100-acre farm (the "property") in Columbia County, Wisconsin, in the early 1960's. Hubert and Eldon Rode are officers of Rode and had resided continuously on the property, with their families, during all times relevant to this appeal.[1] The property was financed with a mortgage secured through FmHA. In the late 1970's, Rode defaulted on its FmHA loan, and the United States, acting through FmHA, foreclosed on the property in 1982. The United States purchased the property at the resulting marshal's sale on June 8, 1982. The sale was confirmed by the United States District Court for the Western District of Wisconsin on August 19, 1983, and the United States recorded the deed to the property with the Columbia County Registrar of Deeds on September 19, 1983.

By letter dated November 10, 1986, Rode was advised by FmHA of its leaseback/buyback rights under the 1985 Act. In accor-

---

1. The Rode families remained on the property until mid-1992 when this court denied their request for a stay of enforcement of the district court order pending appeal.

dance with these rights, Rode leased the property from the United States from April 1, 1987, until March 31, 1988, and again from April 1, 1988, until March 31, 1989.[2] Each lease was for a one-year term and explicitly noted that Rode had the right to purchase the entire property back at any time during the life of the lease. Rode did not exercise its purchasing option under either lease. In addition to the express option to purchase the entire property that was provided in the lease, on February 29, 1988, Rode received a letter from FmHA entitled "Notice of the Availability of Dwelling Retention." In relevant part the notice provided:

> The Farmers Home Administration (FmHA) has acquired farm real estate property, which was previously pledged as security for your FmHA farm loan(s). The homestead portion of the property may be available for you to lease with an option to purchase, under new, less restrictive, eligibility criteria set forth by the Agricultural Credit Act of 1987. Regulations implementing the revisions have not been issued, but should be available in this office in the near future.

> In order for you to be considered for dwelling retention under the new legislation YOU MUST CONTACT AND MAKE APPLICATION AT THE LOCAL FmHA COUNTY OFFICE, NO LATER THAN APRIL 5, 1988.

Plaintiff's Ex. B. (emphasis in the original). Subsequently, the Secretary promulgated regulations, effective September 14, 1988, specifying the content of the notice required under the 1987 Act. The main difference between the notice Rode actually received and the notice required by the FmHA regulations is the latter's inclusion of a more precise definition of "homestead property" as including up to ten acres of adjacent land and outbuildings. Rode did not request homestead protection prior to the April 5 deadline. However, Rode did enter a one-year lease with FmHA that commenced on April 1 of the same year.

After the expiration of the 1988–89 lease, the United States and Rode did not extend the lease or enter into a new lease. Nonetheless, Rode remained on the property until it was evicted in 1992 pursuant to this litigation. On February 5, 1990, Rode wrote to FmHA and made an offer to repurchase the property. FmHA denied the offer and Rode requested reconsideration of that denial. Ronald Caldwell, Wisconsin State Director of FmHA, responded in a letter dated March 26, 1991. That letter stated in part:

> [T]he decision by the County Supervisor is supported by facts. Your client was given every opportunity within our regulations to purchase the property. Your client failed to meet the terms of the lease, and failed to exercise their option to purchase the farm before the March 31, 1989 option deadline.

R.15, Attachment C, at ¶ 2. The letter also stated that, if Rode did not vacate the property within thirty days, FmHA would initiate eviction proceedings. *Id.* at ¶ 3. Rode did not vacate the property.

On July 10, 1991, the United States initiated this action to evict Rode. On August 16, the district court entered a preliminary pretrial conference order requiring that motions for summary judgment and supporting materials be filed with the court by October 15. On October 11, the United States moved for summary judgment. On November 8, Rode filed a Memorandum of law in Opposition to the Government's Motion for Summary Judgment, along with a joint affidavit of Hubert and Eldon Rode. On November 25, the district court entered summary judgment for the United States. 825 F.Supp. 221. Ten days later, on December 5, Rode filed notice of appeal to this court.

## II

### DISTRICT COURT PROCEEDINGS

The district court held that the United States owns the property in fee simple and

---

**2.** The record does not reflect whether Rode was under a lease or made any payments to the United States between June 8, 1982, and April 1, 1987. The record is also silent as to why Rode did not continue the lease after March 31, 1989, and whether any payments were made to the United States after that date.

granted summary judgment for the government. The district court based its decision upon a finding that the property was CO-NACT property acquired prior to January 6, 1988, the effective date of the 1987 Act. Consequently, Rode was not a "borrower" as defined in the 1987 Act. Therefore, concluded the district court, because Rode previously had been advised of its leaseback/buyback options and in fact had leased the property for two years thereafter, Rode was not entitled to receive copies of the 1951–s regulations regarding availability of the new leaseback/buyback options under the 1987 Act. Turning to the homestead protection program, the district court held that Rode was notified of its right to apply for the homestead protection program and failed to do so before the April 5 deadline. Accordingly, the district court concluded that Rode had been afforded all of its rights under the 1987 Act and the court ordered Rode to vacate the property.

On November 26, the day the district court filed its memorandum opinion granting summary judgment for the United States, Rode filed, in the district court, a supplemental affidavit in opposition to summary judgment. The supplemental affidavit was jointly executed by Hubert and Eldon Rode. Paragraph 3 of the affidavit stated:

> Rode Corporation believed that by leasing their farm for another year and entering into this lease prior to April 5, 1988, they were also preserving their rights to retain the homesteads that were part of the farm they were renting.

R.22. However, Rode did not seek reconsideration or modification of the judgment of the district court; instead it filed an appeal to this court.

## III

### ANALYSIS

The gist of Rode's appeal is that it was evicted from the property without ever having received *adequate notice* from FmHA as to the extent of its rights under the 1987 and 1990 Acts. Rode breaks its claim into several subarguments. First, Rode argues that it was not advised of its leaseback/buyback rights under the 1987 Act. Second, Rode argues that the dwelling retention notice that it received did not satisfy the requirement for "good faith" notice under the 1987 Act. Third, submits Rode, the United States failed to notify Rode of its leaseback/buyback options under the 1990 Act. Finally, Rode argues that the United States' efforts to evict Rode without following its own procedures are a denial of Rode's due process.

In response to Rode's appeal, the United States submits that the only argument that Rode has not waived is that it never received the § 1951–s regulations that were promulgated pursuant to the 1987 Act. Further, submits the United States, Rode is not eligible for participation in the leaseback/buyback program under the 1987 Act, and Rode was adequately apprised of the homestead protection program. After careful review of the record, we agree.

■ We review a district court's grant of summary judgment de novo. To affirm we must find that the evidence, when all factual inferences are taken in the light most favorable to Rode, the nonmovant, presents no genuine issue of material fact and that the United States is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Anderson v. Stauffer Chem. Co.,* 965 F.2d 397, 400 (7th Cir.1992). The court's only inquiry is whether there is a genuine issue for trial, *i.e.,* "whether a proper jury question [is] presented." *Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. at 2510. However, our determination must be made on the basis of the record that was before the district court.

■ A motion for summary judgment goes beyond the pleadings and calls upon the district court to review all affidavits and admissible evidence submitted to the court. In opposing the United States' motion for summary judgment, it was incumbent upon Rode to present enough information to alert the district court that there existed a genuine issue of material fact and to present the legal theories upon which it was relying. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Rode did argue that it was not given adequate notice of either the leaseback/buyback

or the homestead protection rights available under the 1987 Act. However, Rode expressly premised these arguments upon FmHA's failure to send Rode the § 1951–s regulations that became effective in November 1988, several months *after* Rode's eligibility to apply for the 1987 Act programs expired.

Even if we construe Rode's pleadings and memorandum in opposition to summary judgment in the most liberal light, the district court correctly determined that Rode was not eligible for the leaseback/buyback rights granted by the 1987 Act. The property was CONACT property on January 6, 1988, when the 1987 Act became effective, and Rode had previously been notified of the leaseback/buyback provisions under the 1985 Act. Consequently, Rode was not entitled to notice of the 1987 Act leaseback/buyback program. *See* 7 C.F.R. § 1951.911.[3]

██ The district court also correctly determined that Rode had been given notice of the homestead protection provisions of the 1987 Act and had failed to apply prior to the statutory deadline. *See* 7 U.S.C. § 2000(c)(1)(A) (to be eligible for homestead protection, application must be made no later than 90 days after the property has been taken into FmHA inventory or 90 days after January 6, 1988). In the supplemental affidavit that Rode filed the day that the district court filed its opinion granting the government summary judgment, Rode suggested for the first time that the notice of "dwelling retention" it received was confusing. Rode now raises this assertion on appeal. Specifically, Rode argues that, by entering a lease with FmHA on April 1, prior to the April 5 deadline for applying for homestead protection, Rode believed that it was preserving all of its rights. In response, the United States submits that the supplemental affidavit that Rode submitted to the district court cannot be considered by this court because it was not considered by the district court on summary judgment. If Rode believed this supplemental material clarified the argument suggested by its initial affidavit in support of its opposition to summary judgment, the appropriate course would have been to move the district court for reconsideration or modification of its judgment. No such motion was filed. Absent such a motion, Rode's new argument and supplemental affidavit, filed on the date of decision and long after the deadline fixed by the district court, is not properly before us.[4]

██ Rode next suggests that the dwelling retention notice that it received was inadequate because it did not specify that "homestead" protection included the possible option of leasing not only the principal residence but also outbuildings and up to ten acres of the adjoining land. Rode contends that this distinction is vital to any farmer because the land and outbuildings provide a core necessary to maintain the business, while a dwelling alone does not. Rode argues that this discrepancy creates a genuine issue of fact as to whether the notice it received was "good faith" notice of the extent of the homestead protection rights within the meaning of 7 U.S.C. § 2000. Rode did not present this argument to the district court. "We consistently hold that arguments not made in the district court are waived." *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse–Wisconsin, Inc.,* 991 F.2d 1249 (7th Cir.1993). *See also United States v. Livingston,* 936 F.2d 333, 335 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 884, 116 L.Ed.2d 787 (1992) (failure to raise an issue before the district court results in waiver of that issue on appeal).

3. On appeal, Rode argues that to the extent that 7 C.F.R. § 1951.911 is applicable it is contrary to the plain intent of the statute to offer distressed farmers the widest availability of relief. This argument also was never presented to the district court and has not been preserved on appeal. Further, we note that FmHA's interpretations of the statutes that it has been charged to administer are entitled to deference by this court. *See United States v. Markgraf,* 736 F.2d 1179, 1183 (7th Cir.1984) (Secretary has wide discretion in implementing the FmHA loan program and in interpreting its regulations).

4. The district court had established a timetable for the submission of pleadings and material relevant to the motion for summary judgment. It had also informed the parties that:

All motions for summary judgment shall be considered as submitted for ruling without oral argument, unless the court otherwise directs. R.9, Preliminary Pre–Trial Conference Order at 6.

Accordingly, Rode has waived this contention on appeal.[5]

[■] Rode also asserts that FmHA was required to notify it of leaseback/buyback options under the 1990 Act. The 1990 Act requires that additional notification of the leaseback/buyback program be given to any party who has leased property from FmHA within the twelve months prior to the Act's effective date. The last lease that Rode had on the property expired on March 1, 1989, over twelve months prior to November 1990, when the 1990 Act took effect. Nonetheless, Rode asserts that the Agricultural Credit Act expressly does not preempt state law and that under Wisconsin property law Rode remained a tenant on the property until evicted in 1992.[6] Rode did not present this argument to the district court. Accordingly, it has been waived. Finally, Rode argues that FmHA's refusal to consider it eligible for leaseback/buyback and the allegedly deficient notice regarding homestead protection constituted a denial of due process of law. This argument was presented to the district court only in conclusory terms and, consequently, cannot be considered on appeal. *See Marshall v. Allen*, 984 F.2d 787, 793 n. 3 (7th Cir.1993) (it is not the court's obligation to provide reasoned elaboration for a party's cursory arguments).

### Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.

---

**5.** While unnecessary to our decision today, we note that, if we did reach the merits of Rode's arguments with respect to the adequacy of notice of the 1987 homestead provisions, we would find them without merit. The notice given adequately informed Rode of the existence of the program, the deadline for applying, and the source of additional information. Given the basic scheme of the Agricultural Credit Act, it would not have been reasonable for Rode to believe that merely entering into a lease with FmHA preserved the homestead option. While the notice did not detail the nature of the homestead option, describing it as "dwelling retention," it gave sufficient notice to alert a reasonably prudent farmer to inquire further as to the details.

**6.** Since oral argument in this case, another panel of our court has ruled that, at certain stages of foreclosure proceedings, federal law—particularly the Agricultural Credit Act as amended—expressly preempts Wisconsin's state law providing for a one-year period of redemption under a mortgage authorized by the Farmers Home Administration. *See United States v. Einum*, 992 F.2d 761 (7th Cir.1993). We acknowledge, however, that the issues and facts in dispute in the two appeals are quite dissimilar.