**HERMAN OIL, INC., Plaintiff and Appellant,**

v.

**Harvey PETERMAN and Shirley Peterman, Defendants and Appellees.**

Civ. No. 930275.

Supreme Court of North Dakota.

June 15, 1994.

Fred C. Rathert (argued), of Bjella, Neff, Rathert, Wahl & Eiken, PC, Williston, and Lyle R. Panasuk (appearance), Hebron, for plaintiff and appellant.

Michel W. Stefonowicz (argued), Crosby, and Jeffrey J. Peterson (appearance), Bowbells, for defendants and appellees.

LEVINE, Justice.

Herman Oil, Inc. appeals from a judgment dismissing its action to collect on a personal guaranty by Harvey and Shirley Peterman for the debts of Peterman Oil, Inc., a corporation owned by the Petermans and their son. We hold that the trial court's implicit determination that Herman Oil and Peterman Oil did not intend written invoices to be a final expression of their agreement was not clearly erroneous and permitted the court to rely on extrinsic evidence to determine the terms of that agreement. We further hold that the court's findings on the terms of that agreement were not clearly erroneous. We therefore affirm the judgment.

I

Herman Oil, a Williston-based North Dakota corporation engaged in the retail sale of fuel, purchased most of its petroleum products from Canadian refineries for resale in the United States. During 1990, Herman Oil sold fuel directly to a Canadian purchaser, Charles Mass, who transported the fuel back to Canada for resale. Herman Oil discontinued direct sales to Mass in November 1990, because it was concerned that those sales would jeopardize its supply of petroleum products from the Canadian refineries.

This lawsuit involves a dispute over the terms of an agreement between Herman Oil and Peterman Oil in the purchase of fuel by Mass. Herman Oil said it sold fuel directly to Peterman Oil, a North Dakota corporation engaged in trucking and selling fuel, and Peterman Oil independently sold that fuel to Mass. Herman Oil claimed that no special arrangement existed between it and Peterman Oil in the sale of fuel to Mass.

The Petermans told a different story. According to them, Herman Oil contacted Peterman Oil to "handle the paperwork" for the sales to Mass. The transactions with Mass were part of a "special arrangement" with Peterman Oil to act as a conduit for the sale of fuel by Herman Oil to Mass. Petermans explained that Mass initially issued checks to Peterman Oil for the fuel and Peterman Oil issued checks to Herman Oil, but that Peterman Oil and Herman Oil later agreed that Herman Oil would "hold" Peterman Oil's checks until Mass's checks to Peterman Oil were paid by his Canadian bank.

In April 1991, Peterman Oil issued a check to Herman Oil to pay for fuel for Mass. However, Mass ultimately failed to pay Peterman Oil for that fuel, and Peterman Oil's check to Herman Oil was returned for insufficient funds. Herman Oil sued Petermans individually to collect on their personal guaranty of Peterman Oil's obligations. The trial court determined that a "special arrangement" existed between Herman Oil and Peterman Oil for Mass's account, and, because of that arrangement and their agreement to hold Peterman Oil's checks until Mass's checks cleared his bank, Peterman Oil was not obligated to pay Herman Oil until Mass paid Peterman Oil. The court concluded that Petermans were not liable to Herman Oil on their personal guaranty of Peterman Oil's debts and dismissed Herman Oil's action against them. Herman Oil appealed.

II

Herman Oil argues that Article 2 of the Uniform Commercial Code makes the written invoices it issued to Peterman Oil separate contracts, each setting the price and

payment terms for the fuel purchased under that invoice. It argues that because all prior and subsequent oral agreements between it and Peterman Oil contradicted payment terms in the written invoices, the parol evidence rule barred the trial court's consideration of those agreements. Petermans respond that Article 2 is not applicable because Peterman Oil's agreement with Herman Oil did not involve the "sale" of goods. They assert that Peterman Oil and Herman Oil orally agreed for Peterman Oil to act as a conduit for the sale of fuel to Mass and that their oral agreement is exempt from the statute of frauds under N.D.C.C. § 9–06–04. They argue that the trial court did not err in considering extrinsic evidence relating to the parties' oral agreement and that the court's findings on the terms of that oral agreement are not clearly erroneous.

### A

■ We initially consider whether the invoices issued by Herman Oil to Peterman Oil created enforceable contracts for the sale of goods.[1]

■ In order to create an enforceable "contract for the sale of goods for the price of five hundred dollars or more," the U.C.C.'s statute of frauds requires "some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought." N.D.C.C. § 41–02–08(1) [U.C.C. § 2–201(1)].[2] According to the official comment to U.C.C. § 2–201, the purpose of a writing is to "afford a basis for believing that the offered oral evidence rests on a real transaction." *Dangerfield v. Markel*, 252 N.W.2d 184 (N.D.1977). *See* 1 White and Summers, Uniform Commercial Code § 2–4 (3rd Ed.1988). "Only three definite and invariable requirements as to the memorandum are made by this subsection. First, it must evidence a contract for the sale of goods; second, it must be 'signed', a word which includes any authentication which identifies the party to be charged; and third, it must specify a quantity." *Id.*

The U.C.C. defines "sale" as "the passing of title from the seller to the buyer for a

---

1. "Goods" mean "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (chapter 41–08), and things in action." N.D.C.C. § 41–02–05(2) [U.C.C. § 2–105(1)]. Here, the parties do not dispute that the subject of the invoices, fuel, is a "thing[] which [is] movable at the time of identification to the contract," thus satisfying the U.C.C.'s definition of goods. *Amoco Production Co. v. Western Slope Gas Co.*, 754 F.2d 303 (10th Cir.1985). *See Dawn Enterprises v. Luna*, 399 N.W.2d 303 (N.D.1987) [sale of ethanol governed by N.D.C.C. ch. 41–02]; Annot., What Constitutes "Goods" Within the Scope of UCC Article 2, 4 A.L.R.4th 899, § 12 (1981).

2. Section 41–02–08, N.D.C.C., says:
   *"Formal requirements—Statute of frauds.*
   "1. Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

   "2. Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection 1 against such party unless written notice of objection to its contents is given within ten days after it is received.
   "3. A contract which does not satisfy the requirements of subsection 1 but which is valid in other respects is enforceable:
   "a. If the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement;
   "b. If the party against whom enforcement is sought admits in his pleading, testimony, or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; or
   "c. With respect to goods for which payment has been made and accepted or which have been received and accepted (section 41–02–69)."

price." N.D.C.C. § 41–02–06(1)(d) [U.C.C. § 2–106(1) ]. Under N.D.C.C. § 41–02–46 [U.C.C. § 2–401], unless otherwise agreed, title passes when the seller completes "performance with reference to the physical delivery of the goods." In this case, all of the written invoices issued by Herman Oil to Peterman Oil specified delivery and receipt of a quantity of fuel at a designated price greater than $500, thus evidencing a passing of title from Herman Oil to Peterman Oil and meeting the first and third requirements for memoranda.

All but four of the invoices were signed by a representative of Peterman Oil. However, Herman Oil and Peterman Oil both "deal[ ] in goods of the kind." They are both merchants under N.D.C.C. § 41–02–04, and, between merchants,[3] an unsigned writing in confirmation of a contract and sufficient against the sender satisfies the signature requirement, unless a written notice of objection is given within ten days after it is received. N.D.C.C. § 41–02–08(2). The four unsigned invoices satisfied that "between merchants" exception to a signed writing. *Northwestern Equipment, Inc. v. Badinger Sand and Gravel,* 403 N.W.2d 8 (N.D.1987). *See generally* White and Summers, *supra,* § 2–5.

Under N.D.C.C. § 41–02–08, the written invoices from Herman Oil to Peterman Oil evidenced enforceable contracts for the sale of fuel. *See Alabama Great Southern Railroad Co. v. McVay,* 381 So.2d 607 (Miss.1980) [signed invoices specifying quantity of fuel and omitting price evidence enforceable agreement]. So the question becomes whether the parol evidence rule in the U.C.C. bars the court from considering extrinsic evidence about those invoices. *See generally* 1 White and Summers, *supra,* § 2–10.

### B

Section 41–02–09, N.D.C.C. [U.C.C. § 2–202], outlines the scope of the parol evidence rule under the U.C.C.:

"*Final written expression—Parol or extrinsic evidence.* Terms with respect to

which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented:

"1. By course of dealing or usage of trade (section 41–01–15) or by course of performance (section 41–02–15); and

"2. By evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement."

■ Section 41–02–09, N.D.C.C., changes the common law of contracts and liberalizes the application of the parol evidence rule to writings evidencing a contract for the sale of goods. *Amoco Production Co. v. Western Slope Gas Co.,* 754 F.2d 303 (10th Cir.1985); *Anderson & Nafziger v. G.T. Newcomb, Inc.,* 100 Idaho 175, 595 P.2d 709 (1979); *Barbara Oil Co. v. Kansas Gas Supply Corp.,* 250 Kan. 438, 827 P.2d 24 (1992). *See Urbana Farmers Union Elevator v. Schock,* 351 N.W.2d 88 (N.D.1984). *See generally* 1 White and Summers, *supra,* § 2–9 et seq.

■ Under N.D.C.C. § 41–02–09, the court must initially determine whether the parties intended a writing to be a final expression of their agreement on the written terms, or to be a complete and exclusive statement of their agreement. *Sierra Diesel Injection Service, Inc. v. Burroughs Corp., Inc.,* 890 F.2d 108 (9th Cir.1989); *Amoco Production Co. v. Western Slope Gas Co., supra; Interform Co. v. Mitchell,* 575 F.2d 1270 (9th Cir.1978). 1 White and Summers, *supra,* at § 2–10; 2 Anderson, Uniform Commercial Code § 2–202:21 et seq. (3rd Ed. 1982). *See* Official Comment 3 to U.C.C. § 2–202.

■ Section 41–02–09, N.D.C.C., "definitely rejects ... [a]ny assumption that because

---

**3.** Section 41–02–04, N.D.C.C. [U.C.C. § 2–104], defines "between merchants" as "any transaction with respect to which both parties are chargeable with the knowledge or skill of merchants."

a writing has been worked out which is final on some matters, it is to be taken as including all the matters agreed upon," and the requirement that, before extrinsic evidence may be considered, the written terms must be ambiguous. Official Comment 1 to U.C.C. § 2–202. *See Dawn Enterprises v. Luna,* 399 N.W.2d 303 (N.D.1987). There is no assumption that the parties intended a writing to be final or exclusive and, in fact, the assumption is to the contrary, unless the court expressly finds that the parties intended the contract to be completely integrated. *Amoco Production Co. v. Western Slope Gas Co., supra.*

■ In determining whether a writing is a final expression of the parties' agreement on the written terms, the most important factor is the intent of the parties. *Sierra Diesel Injection Service, supra.* The court may consider the nature and scope of the commercial setting surrounding the writing and the character of the alleged extrinsic terms not in writing. *Amoco Production Co., supra. See* 1 White and Summers, *supra,* § 2–10; 2 Anderson, *supra,* §§ 2–202:22 and 2–202:28. *Cf. Dawn Enterprises v. Luna, supra* [under N.D.C.C. § 41–02–09, relevant extrinsic evidence of the commercial setting of a contract is generally admissible to aid in interpreting the contract]. The intent of the parties is a preliminary question of fact for the court, and the court's determination on that issue is reviewed under the clearly erroneous standard. *Transamerica Oil Corp. v. Lynes, Inc.,* 723 F.2d 758 (10th Cir.1983). *See* 2 Anderson, *supra,* § 2–202:34 et seq. If the court determines that the parties did not intend a writing to be a final expression of the terms of their agreement, the court may rely on extrinsic evidence to determine the parties' agreement. *Amoco Production Co., supra; Transamerica Oil Corp., supra; Hoff Companies, Inc. v. Danner,* 121 Idaho 39, 822 P.2d 558 (1991).

■ Even if the court finds the parties intended a writing to be a final expression of written terms, N.D.C.C. § 41–02–09 authorizes the court to consider extrinsic evidence of course of dealing and course of performance to supplement or explain the written terms.[4] 1 White and Summers, *supra,* § 2–10. As the official comment explains, a written contract need not be ambiguous for the admission of extrinsic evidence of course of performance, course of dealing, or usage of trade, because the proper construction of the writing requires familiarity with the commercial context of the agreement. *See Dawn Enterprises; Urbana Farmers Union Elevator Co., supra;* 1

---

4. Section 41–01–15, N.D.C.C. [U.C.C. § 1–205], says, in part:
"*Course of dealing and usage of trade.*
"1. A course of dealing is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.
    *     *     *     *     *     *
"3. A course of dealing between parties and any usage of trade in the vocation or trade in which they are engaged or of which they are or should be aware give particular meaning to and supplement or qualify terms of an agreement.
"4. The express terms of an agreement and an applicable course of dealing or usage of trade shall be construed wherever reasonable as consistent with each other; but when such construction is unreasonable express terms control both course of dealing and usage of trade and course of dealing controls usage of trade."
Section 41–02–15, N.D.C.C. [U.C.C. § 2–208], says:

"*Course of performance or practical construction.*
"1. Where the contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement.
"2. The express terms of the agreement and any such course of performance, as well as any course of dealing and usage of trade, shall be construed whenever reasonable as consistent with each other; but when such construction is unreasonable, express terms shall control course of performance and course of performance shall control both course of dealing and usage of trade (section 41–01–15).
"3. Subject to the provisions of the next section on modification and waiver, such course of performance shall be relevant to show a waiver or modification of any term inconsistent with such course of performance."

White and Summers, *supra*, § 2–10; 2 Anderson, *supra*, § 2–202:13. *Compare Minex Resources, Inc. v. Morland*, 467 N.W.2d 691 (N.D.1991) [in construing mineral lease, the court may consider extrinsic evidence if contract is ambiguous]; *Jorgensen v. Crow*, 466 N.W.2d 120 (N.D.1991) [in construing contract for deed, the court may consider parol evidence if the contract is ambiguous].

In this case, the written invoices from Herman Oil to Peterman Oil evidenced an enforceable agreement and specified that Peterman Oil acknowledged the following pre-printed terms: "1.5% per month or 18% annual rate on all amounts 25 days or more past due from last statement." However, the invoices did not otherwise identify payments terms. The written invoices did not contain a merger clause [5] and there is no assumption that the parties intended the invoices to be a final expression of their agreement. Under N.D.C.C. § 41–02–09, the trial court could consider extrinsic evidence of the commercial context of the parties' agreement, including evidence of their "special arrangement," to determine that the written invoices were not a final expression of their agreement about terms of payment. The court could also consider extrinsic evidence of the parties' course of dealing and course of performance for Herman Oil to "hold" Peterman Oil's checks until Mass's bank paid his checks. 1 White and Summers, *supra*, § 2–10. *See Dawn Enterprises v. Luna, supra.* The trial court did not expressly find that the parties did not intend the written invoices to be the final expression of their agreement. However, in view of the court's finding that a special arrangement existed between Herman Oil and Peterman Oil and that they in fact agreed to make Peterman Oil's obligation subject to the condition that Mass's checks clear his bank, a condition not in the written invoices, we can infer no other finding but that the court determined the parties did not intend the invoices to be a final expression of their agreement. *Hoff Companies, Inc., supra.* The trial court's implicit determination is not clearly erroneous and permitted the court to rely on extrinsic evidence to determine the terms of the parties' agreement.[6]

### C

Herman Oil argues that the extrinsic evidence does not support the trial court's finding that the parties agreed that Herman Oil would hold Peterman Oil's checks until Mass's checks cleared his bank. In addition

5. One commentator suggests that uncertainty about whether the parties intended a writing to be a final and complete and exclusive expression of the parties' agreement can be eliminated by a conspicuous written merger clause to the effect that the parties consider the signed agreement to be "a final written expression of all the terms of this agreement and is a complete and exclusive statement of those terms." 1 White and Summers, *supra*, § 2–12 at p. 122. Although merger clauses are strong evidence of integration, they are not conclusive. *E.g., Sierra Diesel Injection Service, Inc. v. Burroughs Corp., Inc.*, 890 F.2d 108 (9th Cir.1989).

6. Herman Oil nevertheless characterizes the parties' agreement to hold Peterman Oil's checks as a subsequent modification and argues that any subsequent modifications of the written invoices were required to be in writing under N.D.C.C. § 41–02–16 [U.C.C. § 2–209], which says, in part:

"3. The requirements of the statute of frauds section of this chapter (section 41–02–08) must be satisfied if the contract as modified is within its provisions.

"4. Although an attempt at modification or rescission does not satisfy the requirements of subsection 2 or 3 it can operate as a waiver.

"5. A party who has made a waiver affecting an executory portion of the contract may retract the waiver by reasonable notification received by the other party that strict performance will be required of any term waived, unless the retraction would be unjust in view of a material change of position in reliance on the waiver."

The U.C.C.'s statute of frauds, N.D.C.C. § 41–02–08(3)(c), *see* fn. 1, specifies that a contract that does not satisfy the writing requirements of subsection (1) is enforceable with respect to goods which have been received and accepted. *Hofmann v. Stoller*, 320 N.W.2d 786 (N.D.1982). Here, the requirements of the statute of frauds have been met for the fuel which was received and accepted by Peterman Oil. Moreover, although subsection (3) requires the statute of frauds to be satisfied "if the contract as modified is within its provisions," subsection (4) says that an attempt at modification that does not satisfy subsection (3) can operate as a waiver. *See* 1 White and Summers, *supra*, § 1–6. Extrinsic evidence may be considered to determine if there has been a waiver. *Id.*

to Harvey Peterman's testimony of the parties' oral agreement to hold Peterman Oil's checks, there was also documentary evidence from which the court could infer a course of dealing and course of performance by Herman Oil to hold Peterman Oil's checks until Mass's checks cleared his bank. The evidence on the parties' agreement was conflicting. In that situation, N.D.R.Civ.P. 52(a) instructs that "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses" and weigh conflicting evidence. We are not left with a definite and firm conviction that the trial court's finding about the parties' agreement to hold the checks was mistaken. Accordingly, we conclude the finding was not clearly erroneous.

The judgment is affirmed.

VANDE WALLE, C.J., and SANDSTROM, NEUMANN and MESCHKE, JJ., concur.