1998 ND 29

**Tracy BOE, Plaintiff and Appellee,**

v.

**Robert Wayne ROSE, Personal Representative of the Estate of Hilda Kangas, Defendant and Appellant.**

**Civil No. 970254.**

Supreme Court of North Dakota.

Feb. 12, 1998.

John R. Gregg, Bottineau, for plaintiff and appellee.

Arne F. Boyum, Rolla, for defendant and appellant.

MARING, Justice.

[¶ 1] Robert Wayne Rose (Rose), personal representative of the Estate of Hilda Kangas, appealed from a summary judgment awarding Tracy Boe specific performance of a real estate purchase contract. We conclude there is a material issue of fact whether Boe was a good faith purchaser under N.D.C.C. § 30.1–18–14, and we reverse and remand for a trial on that issue.

[¶ 2] Hilda Kangas died testate January 8, 1994. Her will devised all of her real estate, including four quarters of farmland in Rolette County, to her sister, Johanna Rose, for life and the remainder jointly to Robert

Wayne Rose, Ray Rose, Marjori Johnson, Eldora Haberstad, and Blanche Kangas. Because Johanna Rose predeceased Hilda Kangas, the real property devolved to the remainder devisees subject to administration.[1] *See* N.D.C.C. § 30.1–12–01. Rose was appointed personal representative of Hilda's estate as directed by her will, and, as personal representative, Rose managed the four quarters of farmland, cash renting it to Tracy Boe in 1995 and 1996.

[¶ 3] Rose offered to sell the farmland to Boe for $202,000. On November 5, 1996, in the office of Rose's attorney, Arne Boyum, Rose and Boe executed a purchase agreement, and Boe gave Rose a $2,000 down payment with the entire $200,000 balance due on or before January 31, 1997.

[¶ 4] On December 13, 1996, Rose returned the down payment, accompanied by a letter stating he was rescinding the contract, because three of the owners would not agree to the price. Boe sued Rose for specific performance of the contract. The trial court, after hearing oral argument and reviewing affidavits submitted by Boe, Rose, and Boyum, granted summary judgment awarding Boe specific performance of the contact. Rose appealed.

[¶ 5] On appeal Rose asserts the court should not have granted summary judgment, because there are genuine issues of material fact. He requests this court to reverse the judgment in Boe's favor and direct the trial court to rescind the contract.

[¶ 6] We review this appeal under our summary judgment standards. Summary judgment under N.D.R.Civ.P. Rule 56 is a procedural method for promptly disposing of a lawsuit without a trial if there is no genuine dispute as to either the material facts or inferences to be drawn from the undisputed facts, or if only a question of law is involved. *Diocese of Bismarck Trust v. Ramada, Inc.*, 553 N.W.2d 760, 764 (N.D.1996). Although the litigant seeking summary judgment bears the initial burden of showing there is no genuine issue of material fact, the litigant resisting the *motion* cannot simply rely upon the pleadings or unsupported conclusory allegations, but must present competent, admissible evidence, by affidavit or other comparable means, to demonstrate there is an issue of material fact. *L.C. v. R.P.*, 1997 ND 96, ¶ 6, 563 N.W.2d 799. In considering a motion for summary judgment, the evidence must be viewed in the light most favorable to the party opposing the motion, who must be given the benefit of all favorable inferences which may reasonably be drawn from the evidence. *Keator v. Gale*, 1997 ND 46, ¶ 7, 561 N.W.2d 286.

[¶ 7] Under N.D.C.C. § 30.1–18–11 [UPC § 3–711] a personal representative has broad powers over property of an estate:

> Until termination of the personal representative's appointment, a personal representative has the same power over the title to property of the estate that an absolute owner would have, in trust however, for the benefit of the creditors and others interested in the estate. This power may be exercised without notice, hearing, or order of court.

A personal representative is specifically authorized to "[a]cquire or dispose of an asset ... for cash or on credit, at public or private sale." N.D.C.C. § 30.1–18–15(6) [UPC § 3–715]. The personal representative has the power to "sell, mortgage, or lease any real or personal property of the estate...." N.D.C.C. § 30.1–18–15(23) [UPC § 3–715].

[¶ 8] Under N.D.C.C. § 30.1–18–14 [UPC § 3–714], broad protections are afforded to persons dealing with the personal representative:

> A person who in good faith either assists a personal representative or deals with the personal representative for value is protected as if the personal representative properly exercised the personal representative's power. The fact that a person knowingly deals with a personal representative does not alone require the person to inquire into the existence of a power or the propriety of its exercise. Except for restrictions on powers of supervised personal representatives which are endorsed on letters as provided in section 30.1–16–04, no

---

1. Rose subsequently assigned his one-fifth interest to his daughters, Ronna J. Gerber and Rosalie M. Wingler. Ray Rose died in 1996 and his wife, Nancy L. Rose, became owner of his one-fifth interest in the property.

provision in any will or order of court purporting to limit the power of a personal representative is effective except as to persons with actual knowledge thereof.

The intent of these statutes is to protect persons dealing in good faith with a personal representative and to avoid the necessity of court orders in routine probate administrations. *Green v. Gustafson*, 482 N.W.2d 842, 845 (N.D.1992).

[¶ 9] Having carefully reviewed the record, we conclude Rose has raised an issue of material fact whether Boe was acting in "good faith" when he executed the purchase agreement. This issue merits an evidentiary proceeding before the factfinder and precludes summary judgment.

[¶ 10] During the hearing on the summary judgment motion Rose's attorney argued:

[E]xcept for Mr. Boe's affidavit stating that there was never any intent to get the consent of the heirs in this matter, there was in fact a discussion in my office and he was well aware that the consents were going to be requested, and made no objection to that. And there is no reason why he should, other than the fact that those had not come back in. And he knew there was a potential of a problem if someone did not consent, and he chose to go ahead with the deal anyway....

Regarding this issue, Rose's affidavit states:

On November 5, 1996 Tracy and I went to Arne Boyum's office to have a Purchase Agreement drawn up. We went back on November 6, 1996 and signed the Agreement.

In Attorney Boyum's Office Tracy and I discussed obtaining written approval of the sale from the owners.

Attorney Boyum also submitted an affidavit, stating with regard to this issue:

On November 6, 1996 Wayne Rose and Tracy Boe signed the Purchase Agreement in my office. During the signing process we discussed the necessity of obtaining the consent of the owners of the land to the

terms of the sale as they knew nothing about the sale or its terms.

Boe responded by affidavit:

Although Defendant's Answer of January 30, 1997, asserts the sale was subject to the consent of the heirs, the assertion is not correct. At no time was the sale subject to anyone's approval. The full understanding of the transaction is set forth in the Purchase Agreement.

[¶ 11] The trial court recognized there was a factual dispute about the consent, or lack thereof, of the devisees to the sale, but the court concluded it was not a material dispute because getting the devisees' consent was not made part of the written contract:

The contention that this is conditioned on the fact that the heirs were to give its (sic) approval is not in this contract. And I don't believe it's pertinent to argue it after the fact. If that was to be a condition of the contract, it should have been put into writing with the other terms. But it is not.

The devisees' consent was not a condition of the written contract.[2] Nevertheless, evidence of discussions about the need for the devisees' consent raises a material issue of fact about Boe's actual knowledge and whether he was acting in good faith in dealing with the personal representative when he signed the contract.

▆▆ [¶ 12] Specific performance is an equitable remedy and equitable principles must be followed in its use. *Linderkamp v. Hoffman*, 1997 ND 64, ¶ 5, 562 N.W.2d 734. A litigant seeking the remedy of specific performance is held to a higher standard than one merely seeking money damages, and to receive equity he must "do equity" and must not come into court with "unclean hands." *Sand v. Red River Nat'l Bank & Trust Co.*, 224 N.W.2d 375, 377–378 (N.D. 1974). A purchaser seeking specific performance of a contract for the sale of real property must make a showing of utmost good faith by him in executing the contract.

---

**2.** The court must initially determine whether the parties intended a writing "to be a complete and exclusive statement of their agreement." *Herman Oil, Inc. v. Peterman*, 518 N.W.2d 184, 188 (N.D.1994) (citations omitted). If that was not their intent, the court may rely on parol evidence to determine the agreement. *Id.* at 189.

*See Rohrich v. Kaplan,* 248 N.W.2d 801, 807 (N.D.1976).

[¶ 13] Under N.D.C.C. § 1–01–21 good faith is defined as "an honest intention to abstain from taking any unconscientious advantage of another even through the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious." We explained in *Diocese of Bismarck Trust v. Ramada, Inc.,* 553 N.W.2d at 768, a party's status as a good faith purchaser is a mixed question of fact and law:

> The factual circumstances relating to events surrounding the transaction—the realities disclosed by the evidence as distinguished from their legal effect—constitute the findings of fact necessary to determine whether a party has attained the status of a good faith purchaser without notice. A court's ultimate determination that a party is not a good faith purchaser for value is a conclusion of law, because that determination describes the legal effect of the underlying factual circumstances. [Citations omitted.]

[¶ 14] Boe is entitled to the protection of N.D.C.C. § 30.1–18–14 in dealing with the personal representative only if he acted in good faith. If, for instance, the evidence shows Boe was informed before signing that Hilda had devised the farmland to specific devisees, the personal representative needed their prior approval to sell the farmland, and he had not obtained that approval, the trier of fact could find Boe was not acting in good faith and, therefore, was not entitled to the statute's protection.

[¶ 15] The trial court apparently recognized there was a good faith issue, because it made a specific finding Rose and Boe "each in good faith executed a purchase agreement." However, the court's finding was made in the context of a summary judgment proceeding, without affording the parties an evidentiary hearing to fully develop that issue. We conclude the trial court erred in granting summary judgment, because there is a genuine issue of material fact whether Boe acted in good faith, under N.D.C.C.

§ 30.1–18–14, in purchasing the property from the personal representative. We, therefore, reverse and remand for a trial on that issue.[3]

[¶ 16] VANDE WALLE, C.J., and MESCHKE, J., concur.

SANDSTROM, Justice, dissenting.

[¶ 17] The majority concludes "Rose has raised an issue of material fact whether Boe was acting in 'good faith' when he executed the purchase agreement." Because Rose did not raise the good-faith issue in the trial court, I would affirm.

[¶ 18] " ' "[W]e do not consider questions that were not presented to the trial court and that are raised for the first time on appeal." ' " *Messer v. Bender,* 1997 ND 103, ¶ 10, 564 N.W.2d 291 (quoting *Eastburn v. B.E.,* 545 N.W.2d 767, 773 (N.D.1996), quoting *American State Bank and Trust Co. v. Sorenson,* 539 N.W.2d 59, 63 (N.D.1995)). This rule applies with equal force to an appeal from a summary judgment. *See American State Bank and Trust Co.* at 63 ("Sorenson, however, did not resist the motion for summary judgment on any other grounds. As we have consistently said ... we do not consider questions that were not presented to the trial court and that are raised for the first time on appeal."); *State ex rel. Indus. Comm'n v. Harlan,* 413 N.W.2d 355, 357 (N.D.1987) (applying rule to appeal from summary judgment); *see also* 11 Moore's Federal Practice § 56.41[3][c] (3d ed. 1997) ("As a general rule, arguments and evidence not presented in the district court in connection with a summary judgment motion are waived on appeal...."); *United States v. Rode Corp.,* 996 F.2d 174, 178–79 (7th Cir. 1993) (applying rule to appeal from summary judgment).

[¶ 19] The majority quotes the affidavits of Rose, Attorney Boyum, and Boe to indicate a factual dispute existed as to the "consent, or lack thereof, of the devisees to the sale...." The majority concludes "evidence of discussions about the need for the devisees' consent

---

**3.** In view of attorney Boyum's affidavit regarding facts relevant to the good faith issue, we caution that the practice of an attorney acting as both an advocate and a witness at a trial is strongly discouraged. Rule 3.7, North Dakota Rules of Professional Conduct; *Thompson v. Goetz,* 455 N.W.2d 580, 587 (N.D.1990).

raises a material issue of fact about Boe's actual knowledge and whether he was acting in good faith in dealing with the personal representative when he signed the contract." A careful review of the record reveals Rose never raised the issue of good faith in the trial court—not in any pleading, not in his brief, and not at the hearing.

[¶ 20] The vague allegations contained in the affidavits may indicate the presence of a factual dispute about the devisees' consent. The issues in the trial court were the necessity of the devisees to consent to the sale, and whether Rose had breached a fiduciary duty to the devisees to get the highest price he could for the land. Rose never raised the issue of good faith, or lack thereof, before the trial court. *See Swenson v. Northern Crop Ins., Inc.*, 498 N.W.2d 174, 178 (N.D.1993) (affirming summary judgment where issue had been raised only vaguely, briefly, and without citation, in the trial court); *Harlan* at 357 (reviewing grant of summary judgment and holding "[n]owhere in the briefs accompanying the motions for summary judgment below do we see that these arguments were made. Because these issues were not properly addressed to the court below, they are not reviewable on appeal"); *see also Rode* at 178 (holding "it was incumbent upon Rode to present enough information to alert the district court that there existed a genuine issue of material fact *and to present the legal theories upon which it was relying* ") (emphasis added).

[¶ 21] I would affirm the judgment of the trial court.

[¶ 22] NEUMANN, J., concurs.