[No. D010321. Fourth Dist., Div. One. Dec. 20, 1990.]

JAMES WALGREN et al., Plaintiffs and Appellants, v. CHRISTOPHER DOLAN, as Trustee, etc., et al., Defendants and Respondents.

**COUNSEL**

Richard Pray for Plaintiffs and Appellants.

Schall, Boudreau & Gore and Theresa R. Castagneto for Defendants and Respondents.

## OPINION

**FROEHLICH, J.**—Plaintiffs James and Beverlee Walgren (Walgren) appeal from a judgment granting a nonsuit in favor of defendant Christopher Dolan et al., trustees (Dolan), on Walgren's complaint seeking specific performance of a contract to sell real estate or, in the alternative, money damages. Walgren contends the contract signed by Dolan's father (Dolan, Sr.), now deceased, is enforceable against the trustees and the trust under which the property was held, because the decedent also retained full authority to dispose of trust property by an express provision in the trust. We conclude that Walgren has set forth a viable theory for recovery of specific performance or damages and, accordingly, reverse and remand.

### FACTUAL AND PROCEDURAL BACKGROUND

On August 28, 1986, Walgren entered into a contract with Dolan, Sr., for the purchase of property offered for sale by Dolan, Sr., through a real estate agent. The contract provided that $1,000 would be placed immediately in escrow, and another $14,000 would be deposited by Walgren shortly thereafter as down payment. The contract further provided that should the seller be unable to furnish a marketable title, seller would agree to "perfect said title at his expense."

The property subject to this contract was allegedly represented by both Dolan, Sr., and the real estate agent to be property owned by Dolan, Sr. However, formal legal and record title was held by a trust. According to testimony presented by Walgren, at the time the contract was signed neither Walgren nor the real estate agent had actual knowledge of how the property title was vested. No separate inquiry was made by Walgren or the real estate agent as to the true nature of title. Walgren deposited $1,000 in escrow; however, when Walgren tendered an additional $14,000 cashier's check for the balance of the down payment, the escrow company refused to accept it. Two months later, Dolan, Sr., died.

Defendant Dolan is now and was at the time the contract was signed the trustee of the trust under which the property was held. At the time the trust was created, Dolan, Sr., and his wife were the settlors and sole beneficiaries of the trust. According to the terms of the trust, all duties of the trustee were exercisable only pursuant to the written instructions of Dolan, Sr., and his wife, or the survivor of them.[1] When Dolan, Sr.'s wife died, the trust was

---

[1] The trust instrument provides, in part:

"III. That the duties hereunder assumed by Trustee are exercisable oñly pursuant to the joint written directions of Beneficiary or the survivor of GEORGE W. DOLAN and ANNE

to be divided in two equal shares, the wife's share to become "irrevocably vested" in her appointees. Such vesting was subject, however, to a life estate for the benefit of the surviving husband, as well as discretionary authority in the trustee to invade principal for the husband's benefit. Respondents contend this vesting, which occurred when she in fact predeceased Dolan, Sr., altered the power of Dolan, Sr., over the disposition of property in the trust. The trust provisions, however, seem clear: Until the time of his death Dolan, Sr., had complete control over disposition of property in the trust, even though his beneficial interest therein, arguably, was reduced to a moiety.

Walgren's theory at trial was that the contract is enforceable against the trust because Dolan, Sr., had both an equitable interest in the property and the absolute right to direct the trustees to sell the property. After Walgren presented his case, Dolan moved for a nonsuit. The judge granted the motion on the grounds that Dolan, Sr., did not have legal title at the time of the contract for sale and was therefore without authority to sell the property, and that the parties who did have legal title were not parties to the contract. The judge further charged Walgren with knowledge of the actual status of the title to the property because of record title in the trust at the time the contract was signed. This appeal followed. �rjuin We analyze the appeal upon the familiar review principle that "[o]n appeal from a judgment of nonsuit in favor of defendant at close of plaintiff's case, the question is whether plaintiff presented any substantial issue of fact for the determination of the jury, giving plaintiff's evidence all the value to which it is legally entitled and indulging in every legitimate inference . . . ." (*Gerard* v. *Ross* (1988) 204 Cal.App.3d 968, 981 [251 Cal.Rptr. 604].)

## DISCUSSION

The sole ground upon which nonsuit was granted by the trial court was the lack of legal titleholding of the realty by Dolan, and conversely the failure of the legal titleholder, the trustee, to join in the agreement of sale. Respondent in this appeal relies upon the same ground. We do not, therefore, inquire into the typical requisites for an action in specific performance, such as adequate consideration, mutuality of remedy and a contract with

---

ESTHER DOLAN , it being understood that this is a directional holding trust, except as hereinafter provided."

Regarding real estate transactions, the trust instrument also provides, in pertinent part:

"SECTION ONE . Upon receipt of written directions from the Beneficiary, the Trustee in their capacity as Trustee shall do and perform any or all of the following acts, to wit:

". . . . . . . . . . . . . . . . . . . .

"2. Convey all or any parts of said real property, subject to all matters then of record against the same, to the person or persons designated in said directions and for such consideration and on such terms and conditions as are therein specified."

terms sufficiently definite to permit enforcement. (See *Henderson* v. *Fisher* (1965) 236 Cal.App.2d 468 [46 Cal.Rptr. 173].) We assume (and find nothing in the record to the contrary) these items of proof either were or could have been established by the plaintiff. Our focus, then, is entirely upon the question of the alleged flaw in the contract based upon the status of record title in the trustee, rather than in the name of the individual who executed the agreement of sale—Dolan, Sr.

Analysis of this question is assisted by approaching it in two segments: first, would the contract have been specifically enforceable against Dolan, Sr., and his trustee absent the factor of his death; and second, if it would have been enforceable, does Dolan, Sr.'s death in any way impair that right?

■ The beneficiary of an ordinary trust is empowered to convey only his beneficial interest in the trust property. (60 Cal.Jur.3d, Trusts, § 84, p. 137.) Since the beneficiary holds only equitable title, the legal title residing in the trustee, the beneficiary has no power to convey absolute ownership of trust property. (*City of Los Angeles* v. *Greines* (1930) 107 Cal.App. 481 [290 P. 509].) The Dolan trust was not, however, an ordinary trust. The beneficiary had retained absolute control over trust property, having (even after the death of the cobeneficiary) the complete power to direct the trustee to purchase or sell realty. It would seem inequitable, indeed, to permit one with absolute power over title to realty to decline to perform an agreement for sale of the realty because bare legal title was held in the name of a trustee.

Although a party may lawfully contract to convey property he does not own (*Pacific Hospital of Long Beach* v. *Lackner* (1979) 90 Cal.App.3d 294, 297 [153 Cal.Rptr. 182]; *Collins* v. *Marvel Land Co.* (1970) 13 Cal.App.3d 34, 41 [91 Cal.Rptr. 291]), his failure to obtain legal title as a practical matter precludes enforcement of the contract by way of specific performance. (*Friedrich* v. *Roland* (1950) 95 Cal.App.2d 543, 550 [213 P.2d 423]; *Milkes* v. *Smith* (1949) 91 Cal.App.2d 79, 81 [204 P.2d 419].) Where, however, a party holds the equitable title to realty and has the power to "call for" legal title, it is established that specific performance is available. In *Miller* v. *Dyer* (1942) 20 Cal.2d 526 [127 P.2d 901, 141 A.L.R. 1428], the vendor was the purchaser of the subject realty in a pending escrow, into which the realty's titleholder had deposited a deed. Finding that the vendor had the power, through closing the escrow, to acquire title, specific performance was decreed. (*Id.* at pp. 528, 529.) In *Friedrich* v. *Roland, supra*, 95 Cal.App.2d 543, the vendor owned an undivided interest in the subject realty in fee and had a decree requiring specific conveyance to him of the other undivided property interest. There the court held the vendee could require the vendor "to specifically perform the contract as to the property

owned by him and as to which he had the right to call for legal title." (*Id.* at p. 550; see also *Milkes* v. *Smith, supra,* 91 Cal.App.2d at p. 81; Pomeroy, A Treatise on the Specific Performance of Contracts (3d ed. 1926) Specific Performance of Contracts, § 295, p. 667, fn.)

The application of the above cases to enforcement of a sale by a vendee to a subpurchaser is usually described as based upon the doctrine of equitable conversion. The vendee having a right to acquire title from the titleholder of the realty becomes an equitable owner; having the power to "call" for legal title, he should be required to respond in specific performance to the subpurchaser. (See Comment, Specific Performance by Partial Subvendee, 4 Stan.L.Rev. (1952) pp. 443, 444.) The rationale would seem applicable to any situation in which the vendor has equitable title and the power to control conveyance of legal title. Hence, when the beneficiary of a trust agrees to convey trust realty, and has the power by the terms of the trust to require a deed execution by the trustee, specific performance should be available.

Surprisingly, in these times of great use of inter vivos revocable trusts, most of which contain powers of direction reserved to the trustor beneficiaries, there is no case in California directly in point. We find, however, applicable authority from the Appellate Courts of Illinois. A device called the "Land Trust" appears widely in use in Illinois. While the trustee is vested with legal and record title, full powers of management and control are reserved to the beneficiary. (See Martindale-Hubbell Law Directory, Vol. VIII (1990) Illinois Law Digest, p. 58.) Such trusts are, therefore, the practical equivalent of the Dolan trust.

The power specifically to enforce an agreement by the beneficiary of such trust to sell realty of the trust was explained in *Seaberg* v. *American Nat. Bank and Trust Co. of Chicago* (1976) 35 Ill.App.3d 1065, 1069-70, [342 N.E.2d 751, 754] as follows:

". . . [T]he beneficiary of a conventional land trust, as used in Illinois, may under appropriate circumstances enter into a valid contract to convey title to the trust property. He may do so not as agent of the trustee but in his capacity of beneficiary. This right is limited to situations in which the trust agreement vests in him the sole right to direct the trustee to convey title. Such a contract will be mutually enforceable by the beneficiary as seller and the buyer where it expressly, or by reasonable construction, provides for exercise by the beneficiary of the power to direct conveyance." (See also *Kirsch* v. *Rochford* (1977) 55 Ill.App.3d 1042 [371 N.E.2d 899]; *Farley* v. *Roosevelt Memorial Hosp.* (1978) 67 Ill.App.3d 700 [384 N.E.2d 1352].)

We believe the Illinois authority to be in point and correct. We therefore conclude that specific performance (assuming all other requisites of the remedy are established) is available in California to a vendee who has an agreement to purchase realty executed by the holder of beneficial interest in a trust which is legal titleholder, where the beneficiary has the power under the terms of the trust to require a conveyance by the trustee.

We are confirmed in this conclusion by a review of the evolution of the law of creditors' rights as respects interests in California revocable inter vivos trusts. The increasing use of revocable living trusts as probate avoidance devices caused concern in the California Legislature over the problems faced by creditors of settlors.[2] Provisions in the current Probate Code provide that settlors may not prevent creditors from recovering from trust property by restraining the transfer of their interest in the trust.[3] Also, provisions that took effect in 1987 specifically permit creditors to reach property of a trust over which the settlor has retained the power of revocation, even after the settlor's death.[4] In adopting Probate Code sections 18200 and 18201, the California Legislature followed the lead of Massachusetts and Oregon by patterning these provisions after the law governing property subject to a general power of appointment by the donee.[5] The Law Revision Commission comment to Civil Code section 1390.3 states as part of the purpose of enacting this section:

"It is intended to make appointive property available to satisfy creditors' claims when the donee has the equivalent of full ownership of the property."

Although Probate Code sections 18200 and 18201 did not take effect until 1987, these rules represent a clarification of an unsettled area of law and apply to trusts regardless of when they were created.[6]

In *Heywood* v. *Municipal Court* (1988) 198 Cal.App.3d 1438 [244 Cal.Rptr. 435], this court relied on Civil Code section 1390.3 and Probate Code section 18201 in finding that, where the decedent retained a general power of appointment over the assets transferred by him to a revocable inter vivos trust, trust assets were subject to the claims of a creditor. (*Id*. at pp. 1445, 1446.) As in *Heywood*, the decedent in this case retained a general

---

[2] Recommendation Proposing Trust Law (Dec. 1985) 18 California Law Revision Commission Report (1986) page 594.

[3] Probate Code section 15304.

[4] Probate Code sections 18200, 18201.

[5] Civil Code section 1390.3.

[6] Recommendation Proposing the Trust Law (Dec. 1985) 18 California Law Revision Commission Report (1986) pages 609, 610.

power of appointment over the trust assets, as well as the express authority to control the assets. Similarly, we see no reason to deny a party the right to pursue specific property of a trust for which he has a valid sales contract and which the settlor has for all practical purposes treated as his own.

The trial court ruled against Walgren partially upon the theory that Walgren should be charged with knowledge of the status of record title, and hence should know that he could not expect to enforce an agreement made with Dolan, Sr., the holder of only a beneficial interest. This determination fails, we believe, on two grounds.

The first relates to the purpose of the recording acts. The primary purpose of the recording laws is the protection of bona fide purchasers for value and without notice of title defects. (1 Ogden's Revised Cal. Real Property Law (1974) Recording and Constructive Notice, § 10.2, pp. 413, 414.) Walgren does not rely on any status as a bona fide purchaser, and certainly Dolan as trustee of a revocable trust cannot claim to occupy, because of record title, a stronger position than his beneficiary. This is not a dispute between parties who relied on record title as against strangers with claims to the property, but one between parties in privity. The recording act should have no application.

A second ground for rejecting a defense based on the record status of title arises from a consideration of what Walgren would have known had he in fact been aware of record title. He would have known of the existence of a trust, which would have obligated him to determine its terms. Such investigation would have revealed that Dolan, Sr., had the absolute power of controlling trust conveyances. In short, the investigation would have revealed exactly the conclusion we reach here: that Dolan had the power to direct trust conveyances, and hence had the equitable power of entering into enforceable agreements for the sale of trust realty.

Concluding, then, that the Dolan-Walgren contract of sale was enforceable during the lives of the parties, is there any defense provided by the death of Dolan, Sr.? We conclude there is not. ■ The enforceability of contracts in general (other than those for personal services) survives the death of a contracting party. (*Estate of Burke* (1926) 198 Cal. 163, 167 [244 P. 340, A.L.R. 1341]; Annot. (1962) 84 A.L.R 2d at p. 48, § 8(b). When a vendor dies before conveyance, an action for specific performance may be maintained against his heirs and devisees. (*O'Donnell* v. *Lutter* (1945) 68 Cal.App.2d 376, 385 [156 P.2d 958].) Although Walgren's action for damages presumably should have been brought against Dolan, Sr.'s estate, the action for specific performance necessarily had to be brought against the

successors-in-interest to the title to the realty, which would be either the trustees or the successor beneficiaries of the trust.

"Whenever an obligation in respect to real property would be specifically enforced against a particular person, it may be in like manner enforced against any other person claiming under him by a title created subsequent to the obligation . . . ." (Civ. Code, § 3395.)

The record here does not disclose whether title to the property remained in the hands of Dolan as trustee, or had been distributed to the beneficiaries of the trust. All these parties were named as defendants, however, and hence it appears all necessary parties were before the court.

### DISPOSITION

The judgment is reversed and the case remanded for further proceedings consistent with this opinion. Whether it is possible for the trial court now to grant specific performance will, of course, depend upon what transfers of title, if any, have occurred since the first trial. Similarly, the joinder of any new parties, such as Dolan, Sr.'s estate for the purpose of assessing damage, is a matter left to the sound discretion of the trial court. Walgren is entitled to costs on appeal.

Kremer, P. J., and Todd, J., concurred.