2006 ND 109

**Jerry LANDERS, Randy Landers, Julie Landers, Altha Landers, and Herman Landers, Plaintiffs and Appellees**

v.

**Neal BIWER and Cherlyn Biwer, Defendants and Appellants.**

**No. 20050313.**

Supreme Court of North Dakota.

May 16, 2006.

Dean A. Frantsvog, Frantsvog Law, P.C., Minot, N.D., for plaintiffs and appellees.

Monte L. Rogneby, Vogel Law Firm, Bismarck, N.D., for defendants and appellants.

SANDSTROM, Justice.

[¶ 1] Neal and Cherlyn Biwer appeal the district court's judgment entered after a bench trial. The Biwers argue the district court erred when it did not specifically enforce a land sale agreement between Jerry, Randy, Julie, Altha, and Herman Landers ("the Landers") and themselves. The district court also refused the Biwers' request for money damages. Lastly, the Biwers appeal the district court's judgment ordering them to pay rent and repair costs to the Landers for use of a Wishek disk. We affirm the district court's denial of specific performance, denial of money damages for the Biwers, and grant of damages for the Landers for use of the disk. We reverse and remand because the district court clearly erred when it did not order the Landers to return $500 paid towards the purchase of the property in dispute.

I

[¶ 2] In May 1997, the Biwers and the Landers signed an option agreement granting the Biwers an option to buy property known as the "South Quarter." The Biwers exercised the option. According to the Biwers, they exercised the option because the Landers agreed to sell them another property known as the "North Quarter." The Landers maintain they never agreed to sell the North Quarter.

[¶ 3] On January 21, 2002, the parties met in Stanley, North Dakota, to complete the transaction. After discussing the South Quarter, an argument arose between Neal Biwer and Herman Landers over whether the North Quarter was part of the transaction. Neal Biwer left the room, and Cherlyn Biwer continued to discuss the North Quarter with the Landers. According to the Biwers, the Landers agreed to execute an option agreement for the North Quarter, but the Landers claim

they believed they were entering into a right-of-first-refusal contract, not an option agreement. The following day, the parties met in Kenmare, North Dakota, to finish the transaction. The parties completed the transfer of the South Quarter, which is not in dispute on appeal. Also on that day, an option agreement on the North Quarter was signed. None of the Landers read the option agreement before signing it. The Landers contend Cherlyn Biwer misrepresented the contract, stating it was a right of first refusal.

[¶ 4] After discovering the agreement they signed was actually an option agreement, the Landers sued the Biwers to rescind the option and to collect past debts they claimed the Biwers owed them, including the cost of rent and repairs for a disk the Landers loaned to the Biwers. The Biwers counterclaimed, requesting specific performance of the option agreement, or, in the alternative, damages. The district court found the option agreement was enforceable because the Landers failed to read it, but concluded specific performance was inappropriate because the agreement was not just and reasonable to the Landers and the Biwers misrepresented the contract. The district court also denied the Biwers' request for money damages. The court found, relying on the Biwers' testimony, that the land was worth less than the contract price, so they were not entitled to any damages. The court also ruled the Biwers owed the Landers $1,100 in rent and damages for the use of and repairs to the Wishek disk.

[¶ 5] On appeal, the Biwers argue the district court erred when it concluded they were not entitled to specific performance or, in the alternative, damages. The Biwers also argue the district court erred when it concluded they owe the Landers rent and repairs for the disk. The Lan-

ders argue the district court correctly decided the case.

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2, 6, and N.D.C.C. § 27–02–04 and §§ 28–27–01 through 28–27–02.

## II

[¶ 7] The Biwers argue the district court abused its discretion when it denied their request for specific performance. Specific performance rests in the sound discretion of the district court, and this Court will not reverse a lower court's decision unless it has abused its discretion. *Linderkamp v. Hoffman*, 1997 ND 64, ¶ 5, 562 N.W.2d 734. "A court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, or if it misinterprets or misapplies the law." *Sec. Nat'l Bank v. Wald*, 536 N.W.2d 924, 928 (N.D.1995).

[¶ 8] Specific performance is presumed to be the proper remedy when there is a breach of an agreement to transfer real property:

It is to be presumed that the breach of an agreement to transfer real property cannot be relieved adequately by pecuniary compensation and that the breach of an agreement to transfer personal property can be thus relieved.

N.D.C.C. § 32–04–09. Section 32–04–13, N.D.C.C., provides for exceptions when specific performance cannot be enforced, however:

Specific performance cannot be enforced against a party to a contract in any of the following cases:

. . . .

2. If it is not as to that party just and reasonable.

3. If such party's assent was obtained by misrepresentation, concealment, circumvention, or unfair practice of any party to whom performance would become due under the contract, or by any promise of such party which has not been substantially fulfilled.

[¶ 9] In *Boe v. Rose*, this Court outlined the equitable considerations for specific performance:

Specific performance is an equitable remedy and equitable principles must be followed in its use. *Linderkamp v. Hoffman*, 1997 ND 64, ¶ 5, 562 N.W.2d 734. A litigant seeking the remedy of specific performance is held to a higher standard than one merely seeking money damages, and to receive equity he must "do equity" and must not come into court with "unclean hands." *Sand v. Red River Nat'l Bank & Trust Co.*, 224 N.W.2d 375, 377–378 (N.D.1974). A purchaser seeking specific performance of a contract for the sale of real property must make a showing of utmost good faith by him in executing the contract. *See Rohrich v. Kaplan*, 248 N.W.2d 801, 807 (N.D.1976).

1998 ND 29, ¶ 12, 574 N.W.2d 834.

[¶ 10] The Biwers argue that only the contract should be examined and not the other circumstances surrounding the transaction when considering whether specific performance would be just and reasonable. *See Linderkamp*, 1997 ND 64, ¶ 5, 562 N.W.2d 734 ("Specific performance may be denied if a contract is not fair, reasonable, and based on adequate consideration."). Specific performance, however, is an equitable remedy and equitable principles must be followed. *Id.* California, for example, in analyzing its statute limiting the use of specific performance examines all the circumstances of a transaction as

they existed at the time the contract was entered to decide whether the transaction is just and reasonable. *See Ellison v. Ventura Port Dist.*, 80 Cal.App.3d 574, 145 Cal.Rptr. 665, 670 (1978) ("It is settled that the fairness and reasonableness of a contract is determined from the circumstances as they existed at the time of the making of the contract.") (citing *County of L.A. v. Law Bldg. Corp.*, 254 Cal.App.2d 848, 62 Cal.Rptr. 542, 547 (1967)). We are persuaded by the California court's logic because its approach better serves the equity principals on which specific performance is based. *See Sand*, 224 N.W.2d at 377 ("As such, concepts of justice, and even mercy, for the individual case predominated over general rules of law."). We conclude that all the circumstances surrounding the transaction may be considered when deciding whether specific performance is just and reasonable to a party.

[¶ 11] Herman Landers testified at trial that he told the Biwers the North Quarter was not for sale. He testified Cherlyn Biwer asked him if he would sell the North Quarter to them if he ever decided to sell. Herman Landers testified that the day they signed the North Quarter option, Cherlyn Biwer told him they were signing "an option giving us first chance to buy if you ever decide to sell." Herman Landers testified he completely trusted her. He also testified he considers the North Quarter a family keepsake. Cherlyn Biwer testified she asked the Landers, "[I]f you don't want to sell it today will you give us an option to buy it?" In light of the Landers' adamant unwillingness to sell, the short time in which the Biwers claim the Landers had changed their minds, the Landers' understanding that the document was a right of first refusal, and Cherlyn Biwer's comment of "if you don't want to sell it today," the

district court found that the Biwers had not proven specific performance would be just and reasonable to Herman Landers. We give "due regard to the trial court's opportunity to assess the credibility of the witnesses, and the court's choice between two permissible views of the evidence is not clearly erroneous." *Moen v. Thomas*, 2001 ND 95, ¶ 20, 627 N.W.2d 146. The district court reasonably concluded that the Landers' unwillingness to sell, the Landers' belief that the contract was a right of first refusal, and Cherlyn Biwer's and Herman Landers' exchange about an option if the Landers did not want to sell the North Quarter that day made specific performance neither just nor reasonable to Herman Landers. The Landers regarded the North Quarter as a family keepsake, and the district court, exercising its province to assess the credibility of the witnesses, clearly believed the Landers had no intention of selling it. Therefore, the district court did not abuse its discretion when it concluded specific performance would not be just and reasonable to the Landers.

[¶ 12] The court also found the Biwers misrepresented the contract to the Landers as a right of first refusal. Although this misrepresentation could not rescind the contract because the Landers failed to read what they signed, the court was clearly persuaded by Herman Landers' testimony that Cherlyn Biwer told them the contract was "an option giving us first chance to buy if you ever decide to sell." Although Cherlyn Biwer disputed the testimony, the court concluded Herman Landers' testimony was more credible. We give "due regard to the trial court's opportunity to assess the credibility of the witnesses, . . . ." *Moen*, 2001 ND 95, ¶ 20, 627 N.W.2d 146. Herman Landers' testimony is evidence that the Biwers came "into court with 'unclean hands.'"

*Boe,* 1998 ND 29, ¶ 12, 574 N.W.2d 834. Therefore, the district court did not abuse its discretion when it concluded that because of their misrepresentations, the Biwers were not entitled to the equitable remedy of specific performance. The district court's denial of specific performance of the contract is affirmed.

### III

[¶ 13] The Biwers argue the district court erred when it concluded they were not entitled to any damages for the breach of the option agreement. The Biwers argue they may rely on the Landers' complaint and Herman Landers' deposition testimony to prove the value of the North Quarter. The amount of damages to which a party is entitled is a question of fact, and this Court will not reverse the district court unless it is clearly erroneous. *Hopkins v. McBane,* 427 N.W.2d 85, 94 (N.D.1988).

[¶ 14] The party seeking damages has the burden to prove the amount of damages incurred. *Olson v. Fraase,* 421 N.W.2d 820, 827 (N.D.1988). Section 32–03–13, N.D.C.C., defines the formula for damages for a breach of a property contract:

> The detriment caused by the breach of an agreement to convey an estate in real property is the difference between the price agreed to be paid and the value of the estate agreed to be conveyed at the time of the breach and the expenses properly incurred in examining the title, and in preparing to enter upon the land, and the amount paid on the purchase price, if any, with interest thereon from the time of the breach.

We will sustain an award of damages if it is within the range of the evidence presented to the trier of fact. *See State v. Tupa,* 2005 ND 25, ¶ 7, 691 N.W.2d 579.

[¶ 15] The Landers' complaint stated the North Quarter "was appraised during the probate in November 1990 at $65,000; which is still the fair market value." Herman Landers testified at his deposition that the North Quarter had been appraised at $60,500. He also testified that if he were to place the North Quarter on the market, he would not take $70,000 and could get $75,000.

[¶ 16] The Biwers also provided evidence regarding value of the North Quarter. In her deposition, Cherlyn Biwer testified a contract price of $50,000 was more than what the land was worth:

> Q: Okay. And is 50,000 a good price for that land?
>
> A: Yes. It's probably more than what it's really worth, but it's worth that to us, because it borders our land.

Cherlyn Biwer testified at trial that $50,000 was a fair price:

> Q: So, you felt basically the negotiated price of 50,000, which works out to be a little more than 300 an acre, was a fair price?
>
> A: It was more than fair.

The Biwers argue the district court may not rely on their own testimony because they were not qualified as experts. Their evidence regarding property value, however, was not objected to by any party but came into evidence and could be considered by the district court. *See Piatz v. Austin Mut. Ins. Co.,* 2002 ND 115, ¶ 7, 646 N.W.2d 681 ("To take advantage of irregularities during trial, a party must object at the time they occur, so that the trial court may take appropriate action if possible to remedy any prejudice that may have resulted."). Evidence from the Landers and the Biwers, therefore, provided the district court with a range of value from $50,000 to $75,000.

[¶ 17] Furthermore, the district court gave the Biwers fourteen days from the date of its memorandum opinion to submit a detailed claim for damages. The district court extended this deadline by another fourteen days. The Biwers presented no expert appraisal in that time, instead relying solely on the Landers' statements of value.

[¶ 18] Section 32–03–13, N.D.C.C., provides for recovery of the difference between the contract price and the value of the real estate at the time of breach. The Biwers' proof of value at the time of breach included amounts both less than and greater than the $55,000 contract price. The value the district court found was within the range of the evidence presented to the trier of fact. Therefore, the district court did not clearly err when it concluded the Biwers were entitled to no damages.

[¶ 19] Section 32–03–13, N.D.C.C., however, provides for the return of the amount paid on the purchase price when there has been a breach of a real estate contract. In the option agreement for the North Quarter, the Biwers paid $500 as consideration for the option that was to be applied towards the purchase price if the option was exercised. The Biwers attempted to exercise the option. Therefore, the Biwers are entitled to return of the $500 paid towards the North Quarter, plus interest due. The district court clearly erred when it did not order the Landers to return the $500 to the Biwers. We reverse and remand to the district court for an order returning the $500 paid towards purchase of the North Quarter, plus interest.

## IV

[¶ 20] The Biwers argue the district court erred when it found they owed the Landers rent and repair costs for the use of the Wishek disk. For disputes involving oral contracts, the trier of fact determines whether an oral contract exists and what the terms of the oral contract are. *Smith Enters., Inc. v. In–Touch Phone Cards, Inc.*, 2004 ND 169, ¶ 13, 685 N.W.2d 741. The findings of the district court will not be reversed unless they are clearly erroneous. *Id.;* N.D.R.Civ.P. 52(a). "On appeal, the trial court's findings of fact are presumed to be correct, and the complaining party bears the burden of demonstrating a finding is clearly erroneous." *Moen*, 2001 ND 95, ¶ 19, 627 N.W.2d 146. We give "due regard to the trial court's opportunity to assess the credibility of the witnesses, and the court's choice between two permissible views of the evidence is not clearly erroneous." *Id.* at ¶ 20.

[¶ 21] Randy Landers testified he and his brother Jerry Landers had loaned the disk to the Biwers in the past. Randy Landers testified the agreement for its use had been $3.50 per acre. The alleged unpaid use of the disk was for roughly 77.5 acres. Randy Landers also testified the disk was damaged when it was returned to them. He testified he paid for repairs costing "over $1,000." The Biwers introduced into evidence four checks that show payment for use of the disk in prior years. From this evidence, the court could reasonably conclude the parties had continued their past oral agreement, under which the Biwers would pay the Landers $3.50 per acre. The court could also reasonably conclude repairs were part of the oral agreement. Randy Landers' testimony showed the amount owed for using the disk was $271.25. Repairs would have been $828.75 of the $1,100 judgment. Randy Landers testified the disk was roughly five or six years old, and some of the repairs, such as bearing replacement, were normal maintenance. Therefore, some reduction in the $1,800 the Landers prayed for is justified. The district court did not clearly err in

finding a contract existed between the parties for use of the Wishek disk or in determining the amount of rent and repairs due. The district court's judgment awarding the Landers $1,100 for rent and repairs for the disk is affirmed.

## V

[¶ 22] We affirm, in part, the district court's judgment denying specific performance, denying money damages for the Biwers, and granting damages for the Landers for use of the disk. We reverse and remand so the $500 paid towards the purchase of the North Quarter, plus interest, may be returned.

[¶ 23] GERALD W. VANDE WALLE, C.J., STEVEN L. MARQUART, D.J., DANIEL J. CROTHERS, and MARY MUEHLEN MARING, JJ., concur.

[¶ 24] The Honorable STEVEN L. MARQUART, District Judge, sitting in place of KAPSNER, J., disqualified.