# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2018 ND 271

Dale Exploration, LLC, Bakken HBT, II LP,
Dale Exploration, LP, and Dale Lease
Acquisitions, LP,                                                    Plaintiffs

v.

Orville G. Hiepler and Florence L. Hiepler,
individually and also as co-trustees of the
Orville G. Hiepler and Florence L. Hiepler
Family Trust dated January 9, 1997,          Defendants and Appellees

Bill L. Seerup and Hurley Oil
Properties, Inc.,                            Defendants and Appellants

     and

Hefner Company, Inc.                                           Defendant

No. 20180065

Appeal from the District Court of Williams County, Northwest Judicial District, the Honorable Joshua B. Rustad, Judge.

REVERSED AND REMANDED.

Opinion of the Court by VandeWalle, Chief Justice.

Adam M. Olschlager, Billings, MT, for defendants and appellants Bill L. Seerup and Hurley Oil Properties, Inc.

Jonathan T. Garaas, Fargo, ND, for defendants and appellees Orville G. Hiepler and Florence L. Hiepler.

**VandeWalle, Chief Justice.**

[¶1]    Hurley Oil Properties, Inc. and Bill L. Seerup appealed from a judgment awarding money damages instead of specific performance for Orville Hiepler's breach of contract, the Mineral Deed, conveying real property. Seerup and Hurley contend the mineral deed signed by Orville Hiepler is enforceable and requires Hiepler to convey the real property currently held by the revocable trust of which he is a settlor, trustee, and beneficiary. We conclude that the mineral deed signed by Orville Hiepler, settlor of the revocable trust, requires conveyance of the property and accordingly, the district court erred in refusing to grant specific performance. We reverse and remand.

I

[¶2]    In 1997 Orville and Florence Hiepler created the "Orville G. Hiepler and Florence L. Hiepler Family Trust Dated January 9, 1997" (the "Trust"). The Hieplers conveyed most of their mineral interests to themselves as co-trustees of the Trust in September 1997. The conveyance was recorded in the office of the Williams County Recorder in March 1998. Under the Trust, which was fully revocable, the Hieplers were grantors, co-trustees, and beneficiaries. Section 1.04(c) of the Trust document gives the settlor the power to add and remove any property from the Trust at any time, without requiring notice to or actions by a trustee.

[¶3]    On April 7, 2007, Orville and Florence Hiepler deeded 150 net mineral acres in Williams County to Bill L. Seerup in exchange for $15,609.00. Included in the Mineral Deed were further assurances and warranty clauses: "Grantor agrees to execute such further assurances as may be requisite for the full and complete enjoyment of the rights herein granted . . ." and "Grantor does hereby warrant said title to Grantee . . . ." The Mineral Deed contained no mention of the Trust or

reference to Orville and Florence Hiepler's role as co-trustees. When the Mineral Deed was executed, the Hieplers, specifically Orville Hiepler, individually owned only 7.3636 mineral acres. The remaining 142.6 mineral acres were owned by the Trust. Orville Hiepler argues that he was unaware of what mineral acres he individually owned when he signed the Mineral Deed.

[¶4] Nine days after receiving the Mineral Deed from Orville and Florence Hiepler, Seerup conveyed 135 mineral acres to Hurley. At trial, Seerup testified that he did not do a title examination on the mineral interests. It is unclear when Seerup became aware that the minerals were titled under the Trust. Seerup did not contact Orville and Florence Hiepler about any issues with the mineral rights until 2011. Seerup testified that he believed Orville Hiepler's signature was sufficient to convey the mineral acres to him, even after learning about the Trust.

[¶5] In 2009 the Trust leased most of its mineral rights to Kasmer & Aafedt Oil, Inc. The lease was originally executed by Orville Hiepler in his individual capacity but was ratified the following year by the Trust via the signatures of Orville and Florence Hiepler as "Co-Trustee of the Hiepler Family Trust Dated 1-9-1987" (sic). These were the same mineral rights Orville and Florence Hiepler deeded to Seerup through the 2007 Mineral Deed.

[¶6] Dale Exploration, LLC, filed suit in fall 2014 to quiet title to 150 net mineral acres conveyed in the Mineral Deed from Orville and Florence Hiepler to Seerup. Florence Hiepler died in 2015. After Florence's death, Orville Hiepler amended and restated the Trust recognizing Orville Hiepler as the sole settlor and Orville and his son, Mark O. Hiepler, as co-trustees. In September 2017, the district court dismissed Dale Exploration's claims on summary judgment, finding no evidence that Dale Exploration had an interest in the disputed property. The court refused to grant summary judgment on either the Hieplers' cross-claim to rescind or reform the Mineral Deed or Seerup's cross-claim requesting specific performance.

[¶7] At a bench trial, the parties stipulated to the Mineral Deed constituting a valid, enforceable, and unambiguous contract that is fully binding between the parties. After

2

trial, the district court asked the parties for proposed findings and conclusions of law. The district court adopted the Hieplers' findings. The court found the Hieplers owned the mineral interests in fee simple as trustees, not as individuals. Additionally, the court found the Hieplers breached the Mineral Deed, but that the breach was of the covenant of seizin[1] and thus the proper remedy was damages under N.D.C.C. § 32-03-11, not specific performance. Damages in the amount of $20,147.96 were awarded. The court found specific performance was not appropriate since an action at law for the breach of the covenant of seizin was available. Further, the court found that Seerup and Hurley had no claim for the breach of the covenant of further assurances because under N.D.C.C. § 47-10-04 the expense of complying with the further assurances falls onto the buyer.

II

[¶8]   We review a district court's findings of fact under the clearly erroneous standard of N.D.R.Civ.P. 52(a) and its conclusions of law de novo. *Service Oil, Inc. v. Gjestvang*, 2015 ND 77, ¶ 12, 861 N.W.2d 490; *Hoff v. Krebs*, 2009 ND 48, ¶ 9, 763 N.W.2d 520. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all the evidence, we are left with a definite and firm conviction a mistake has been made. *Service Oil, Inc.*, at ¶ 12. While this Court does not "approve as a practice the [district] court's wholesale adoption of one party's proposed findings of fact," once the district court signs the proposed findings, they "bec[o]me the court's findings, and if they adequately explain the basis of the court's decision, they will be upheld on appeal unless clearly erroneous under N.D.R.Civ.P. 52(a)." *Smith Enterprises, Inc. v. In-Touch Phone Cards, Inc.*, 2004 ND 169, ¶ 11, 685 N.W.2d 741. Statutory

---

[1] The covenant of seizin is "a promise that the grantor has a lawful estate or good title to the estate which he or she is purporting to convey." 20 Am.Jur.2d *Covenants, Etc.* § 82 (2018). The covenant of seizin warrants that the grantor "was the owner in fee simple" and "had good right to convey." *Anderson v. Olson*, 65 N.D. 550, 260 N.W. 407, 409 (1935). *See* N.D.C.C. §§ 32-03-11 and 47-10-03.

interpretation is a question of law, fully reviewable on appeal. *Greene v. Matthys*, 2017 ND 107, ¶ 10, 893 N.W.2d 179.

[¶9] Hurley and Seerup argue that the district court erred in awarding money damages instead of specific performance for Orville Hiepler's breach of contract to convey real property. Specific performance rests in the sound discretion of the district court, and we will not reverse a lower court's decision unless it has abused its discretion. *Landers v. Biwer*, 2006 ND 109, ¶ 7, 714 N.W.2d 476. A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when it misinterprets or misapplies the law. *Brigham Oil and Gas, L.P. v. Lario Oil & Gas Co.*, 2011 ND 154, ¶ 46, 801 N.W.2d 677. Specific performance is an equitable remedy and equitable principles must be followed in its use. *Landers*, at ¶ 9. "Though [specific performance] is an equitable action, it is available to enforce agreements even though the injured party may have a legal remedy for damages, because in many cases an action for damages would not afford adequate relief." *Larson v. Larson*, 129 N.W.2d 566, 567 (N.D. 1964).

[¶10] Here, it is clear based on Seerup and Hurley's briefs to the trial court that specific performance was requested, despite the parties not citing the applicable statutes directly. We will consider statutes not cited by the parties in their briefing if it has application to the case at hand. *See Cargill, Inc. v. Kavanaugh*, 228 N.W.2d 133, 137 (N.D. 1975). A court does not go beyond the pleadings when it considers the law, even if the law is not cited in the parties' pleadings. *Kraft v. State*, 2016 ND 250, ¶ 6, 888 N.W.2d 547.

[¶11] The district court found that Seerup and Hurley could only recover damages for the Hieplers' breach of the covenant of seizin, citing N.D.C.C. § 32-03-11. However, damages for the breach of the covenant of seizin are applicable only where specific performance is not available. *Compare* N.D.C.C. § 32-04-09 *with* § 32-03-11; *see* N.D.C.C. § 1-02-07. Section 32-04-09, N.D.C.C., presumes that "the breach of an agreement to transfer real property cannot be relieved adequately by pecuniary compensation." *Landers*, 2006 ND 109, ¶ 8, 714 N.W.2d 476; *see also Jonmil, Inc.*

4

*v. McMerty*, 265 N.W.2d 257, 259 (N.D. 1978). "[U]nless a statute or these rules provide otherwise, if facts giving rise to a presumption are established by credible evidence, the presumption substitutes for evidence of the existence of the fact presumed." N.D.R.Ev. 301; *see Sunderland v. N.D. Workmen's Comp. Bureau*, 370 N.W.2d 549, 552 (N.D. 1985).

[¶12]   Suits for breaches of the covenant of further assurances generally seek specific performance rather than damages. Herbert Thorndike Tiffany, *Tiffany Real Prop* § 1015 (3rd Ed 1975). Section 32-04-09, N.D.C.C., supports a buyer's right to specific performance on the ground that monetary damages are presumed to be inadequate. Specific performance cannot be enforced against a party "[i]f it is not as to that party just and reasonable" or "[i]f the party's assent was given under the influence of mistake . . . ." N.D.C.C. § 32-04-13(2),(4). All circumstances surrounding the transaction may be considered when deciding whether specific performance is just and reasonable to a party. *Landers*, 2006 ND 109, ¶ 10, 714 N.W.2d 476 (*citing Ellison v. Ventura Port Dist.*, 80 Cal.App.3d 574, 145 Cal.Rptr. 665, 670 (1978)).

[¶13]   While a "person seeking specific performance has the burden of proving he is entitled to it," statutory presumptions in North Dakota, such as the one found in N.D.C.C. § 32-04-09, "operate to shift both the burden of going forward with evidence and the burden of persuasion." *Wolf v. Anderson*, 334 N.W.2d 212, 215 (N.D. 1983); *Sunderland*, 370 N.W.2d 549, 552 (N.D. 1985). In this case, the presumption under N.D.C.C. § 32-04-09 placed the onus on the Hieplers to prove monetary damages were adequate once Seerup and Hurley showed the inadequacy of damages and pled for specific performance. *See Livinggood v. Balsdon*, 2006 ND 11, ¶¶ 6-8, 709 N.W.2d 723; *see also Sunderland*, 370 N.W.2d 549, 552 (N.D. 1985). The district court erred in not applying the N.D.C.C. § 32-04-09 presumption.

III

5

[¶14] The district court found that Seerup had notice that the mineral interests at issue were owned by the Trust when the Mineral Deed was signed and because Seerup did not check the record title before entering into the Mineral Deed he cannot recover. North Dakota law generally places the risk of not checking the record title on the purchaser. *See Brigham Oil and Gas, L.P.*, 2011 ND 154, ¶ 19, 801 N.W.2d 677. "The record of any instrument shall be notice of the contents of the instrument, as it appears of record, as to all persons." N.D.C.C. § 47-19-19. While the Hieplers properly recorded the transfer of the property to the Trust in 1997, the Hieplers' counsel argued that Orville Hiepler was unaware of the property he owned when he signed the Mineral Deed. However, N.D.C.C. § 47-19-19 placed the Hieplers, as well as Seerup, on notice. Therefore, under the statute the Hieplers also had notice they did not own the property which they were conveying.

[¶15] Recording an instrument provides constructive notice of the contents to all purchasers and encumbrancers after the recording. *Desert Partners IV, L.P. v. Benson*, 2016 ND 37, ¶ 13, 875 N.W.2d 510. "[A] person who fails to make the proper inquiry will be charged with constructive notice of all facts that such inquiry would have revealed." *Id.* at ¶ 14. However, constructive notice does not necessarily preclude specific performance. In *Walgren v. Dolan*, a California Court of Appeals addressed the issue of notice as related to specific performance for property legally owned by a trust. 226 Cal.App.3d 572, 579 (Cal. Ct. App. 1990). In *Walgren*, the purchaser did not check record title prior to entering into a contract for sale of real property. *Id.* at 574. The California court, after awarding specific performance on the contract, determined that notice based on the recorded title was not at odds with its decision. *Id.* at 579. First, the court stated that neither party claimed to be a bona fide purchaser, which recording acts are designed to protect. *Id.* Instead, the two parties were in privity and thus the recording act should have no application. *Id.* Second, the *Walgren* court relied on what the grantee would have known had he examined the title:

> He would have known of the existence of a trust, which would have obligated him to determine its terms. Such investigation would have revealed that [Grantor], had the absolute power of controlling trust

6

conveyances. In short, the investigation would have revealed exactly the conclusion we reach here: that [Grantor] had the power to direct trust conveyances, and hence had the equitable power of entering into enforceable agreements for the sale of trust realty.

*Id*.

[¶16] A similar result occurs in this case. Had Seerup looked to the title records, he would have been put on notice that the land at issue was owned by the Trust. Seerup would then have been obligated to investigate the Trust, revealing that the Trust was revocable and Orville Hiepler was a settlor with the power to add and remove property from the Trust. Seerup would have thus been in the exact same position as he was when he signed the Mineral Deed without looking at the title records. *See Walgren*, 226 Cal.App.3d at 579.

[¶17] Because neither Seerup nor the Hieplers checked the title records, and both were on constructive notice, this factor alone does not preclude specific performance. The district court may consider all circumstances surrounding a transaction when deciding whether specific performance is just and reasonable. *Landers*, 2006 ND 109, ¶ 10, 714 N.W.2d 476. The circumstances here include the Hieplers' 2009 lease of the mineral rights. During this later lease, the Hieplers would have been on constructive notice, based on the title records, that the same property had already been sold to Seerup. Simply ratifying the later lease while wearing the hat of trustee does not cure the Hieplers' constructive notice regarding the property title. Orville Hiepler was a settlor with the power to remove property, who at least constructively knew what property was owned by him individually and by the Trust. The absence of the Hiepler Family Trust name on the Mineral Deed does not change this analysis.

IV

[¶18] Seerup and Hurley Oil Properties requested specific performance by arguing the Hieplers had the ability as individuals to control the Trust and were thus required by the further assurances clause in the Mineral Deed to convey the deeded property to Seerup. The Hieplers argue that they did not have the power to convey the mineral

7

rights as individuals or to remove Trust property as trustees. This is an issue of first impression for this Court. To determine the extent of control held by the Hieplers over the Trust, we must examine the trust documents. When a trust instrument is unambiguous, the settlor's intent is ascertained from the language of the trust document itself. *Hecker v. Stark Cty. Soc. Servs. Bd.*, 527 N.W.2d 226, 230 (N.D. 1994). Whether a trust is ambiguous is a question of law, fully reviewable on appeal. *Id*. The trust document in this case states:

> **Section 1.04  Powers Reserved by Me as Grantor**
>
> As Grantor, I retain the powers set forth in this Section in addition to any powers that I reserve in other provisions of this instrument.
>
> . . .
>
> **(c) Addition or Removal of Trust Property**
>
> I may add property to my trust and may remove any property from my trust at any time.
>
> **Section 1.05 Grantor Trust Status**
>
> By reserving the broad rights and powers set forth in Section 1.04 of this Article, I intend to qualify my trust as a *Grantor Trust* under Internal Revenue Code Sections 671 to 677. This means that, for federal income tax purposes, I will be treated as the owner of all the assets held in my trust during my lifetime, as if I held them in my individual capacity.

Unlike other provisions under Section 1.04, section (c) does not place any limitations on the settlor's power to remove property from the Trust or require action to be taken by the trustee. Examining this language of the trust document allows us to determine the extent to which Orville Hiepler must act, based on the further assurances clause, to perfect the title passed to Seerup through the Mineral Deed. *See* Herbert Thorndike Tiffany, *Tiffany Real Prop* § 1015 (3rd Ed 1975).

[¶19]  While this is an issue of first impression for us, other courts have addressed similar facts. *See Walgren*, 226 Cal.App.3d at 575. *See also Zanelli v. McGrath*, 82

Cal.Rptr.3d 835, 850 (Cal. Ct. App. 2008); *Glass v. Carpenter*, 330 S.W.2d 530, 534 (Tex. Civ. App. 1959); *In re Mogridge's Estate*, 20 A.2d 307, 309 (Pa. 1941). In *Walgren*, the court determined an individual beneficiary could convey trust property without the legal titleholder, the trustee, joining the agreement. 226 Cal.App.3d at 575. The court determined that "[t]he beneficiary had retained absolute control over trust property, having . . . the complete power to direct the trustee to purchase or sell realty." *Id*. at 576. "It would seem inequitable, indeed, to permit one with absolute power over title to realty to decline to perform an agreement for sale of the realty because bare legal title was held in the name of a trustee." *Id*. Based on its analysis, the *Walgren* court held "[w]here . . . a party holds the equitable title to realty and has the power to 'call for' legal title, it is established that specific performance is available." *Id*.

[¶20] North Dakota and California both treat a revocable trust as being subject to the claims of creditors of a settlor. *See* N.D.C.C. § 59-13-05 ("During the lifetime of the settlor, the property of a revocable trust is subject to claims of the settlor's creditors to the extent that the property would be subject to creditors' claims if the property had not been placed in the trust") and West's Ann.Cal.Prob.Code § 18200 (1990) ("If the settlor retains the power to revoke the trust in whole or in part, the trust property is subject to the claims of creditors of the settlor to the extent of the power of revocation during the lifetime of the settlor."). North Dakota has adopted the Uniform Trust Code, which implements the "well accepted conclusion, that a revocable trust is subject to the claims of the settlor's creditors while the settlor is living. *See* Restatement (Third) of Trusts Section 25 cmt. e (Tentative Draft No. 1, approved 1996)." UNIF. TRUST CODE § 505 cmt. to (a)(1) (2010). "Subsection (a)(2), which is based on Restatement (Third) of Trusts Section 58(2) and cmt. e (Tentative Draft No. 2, approved 1999), and Restatement (Second) of Trusts Section 156 (1959), follows traditional doctrine in providing that a settlor who is also a beneficiary may not use the trust as a shield against the settlor's creditors." UNIF. TRUST CODE § 505 cmt. to (a)(2) (2010). Under the Uniform Trust Code, if a settlor has unlimited

9

power to withdraw property or revoke the trust, "the property subject to the power will be fully subject to the claims of the power holder's creditors, the same as the power holder's other assets." UNIF. TRUST CODE § 505 cmt. to (b)(1). Adoption of the Uniform Trust Code shows North Dakota's intent for a revocable trust to be treated as the grantor's property, not as a means for settlors to hide from creditors.

[¶21]In this case, Orville Hiepler is the settlor of the Trust, not just the beneficiary. Under Section 1.04(c) of the Trust, Orville Hiepler specifically reserved the right to add and remove property from the Trust. No restrictions or requirements were placed on this power. For purposes of taxation, and day to day use, the Hieplers as settlors were treated as owning the property in their individual capacity. The Trust appears to be in essence an estate planning tool still under the control of Orville Hiepler who operated as settlor, co-trustee, and beneficiary. Based on the plain language of the Trust document, Hiepler was, and is, in a position to remove property from the Trust as an individual. These facts are more persuasive than those in *Walgren*, because as settlor Hiepler had the power to take the property out of the Trust himself rather than merely instructing someone else to do so. *See* N.D.C.C. § 59-14-03 ("While a trust is revocable, rights of the beneficiaries are subject to the control of, and the duties of the trustee are owed exclusively to, the settlor"); *see also* UNIF. TRUST CODE § 603 cmt. to (a) ("[t]his section recognizes that the settlor of a revocable trust is in control of the trust and should have the right to enforce the trust."). Even though there were other beneficiaries of the Trust, Hiepler as settlor controlled all aspects of the revocable trust. The ability to remove Trust property by himself, along with his constructive notice of what property was and was not included in the Trust when he sold the mineral rights to Seerup in 2007, makes the Mineral Deed enforceable against Orville Hiepler as an individual and as settlor of the Trust.

[¶22] The district court erred in finding that Seerup was entitled to $20,147.96 in damages for the breach of the covenant of seizin instead of awarding specific performance. By awarding damages instead of specific performance, the district court failed to apply the N.D.C.C. § 32-04-09 presumption that damages are inadequate to

10

remedy a breach of an agreement to transfer real property. The district court also erred in finding that Orville Hiepler as an individual was not liable for his conveyance of Trust property. Orville Hiepler was the settlor of a revocable trust. North Dakota law explicitly allows for creditors of a settlor to be able to receive property out of a revocable trust. *See* N.D.C.C. § 59-13-05. The same principle applies here where a settlor had the power to independently remove property from a trust. North Dakota law does not shield a settlor from existing agreements once a better deal arises. While Seerup admittedly did not examine the title, such an examination would have led to the same conclusion: that Orville Hiepler had the power to convey the property. Orville Hiepler was a settlor with the power to remove property, who at least constructively knew what property was owned by him individually and by the Trust. The district court erred in finding that absence of the Hiepler Family Trust name on the Mineral Deed somehow changed the individual power held by Orville Hiepler.

## V

[¶23] The district court abused its discretion for the reasons specified in this opinion. We reverse the damages judgment and remand for further proceedings consistent with this opinion.

[¶24]   Gerald W. VandeWalle, C.J.
Jon J. Jensen
Lisa Fair McEvers
Daniel J. Crothers
Jerod E. Tufte

11